

Not Reported in F.Supp.2d                                                                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 1069132 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

HCoffie v. City of Chicago
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
Coprez COFFIE, Plaintiff,
v.
CITY OF CHICAGO, et al. Defendants.
No. 05 C 6745.

April 21, 2006.

Jonathan I. Loevy, Arthur R. Loevy, Jonathan A. Rosenblatt, Russell R. Ainsworth, Samantha Anne Liskow, Loevy & Loevy, Chicago, IL, for Plaintiff.
Kimberly Michelle Grunewald, City of Chicago, Department of Law, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

NOLAN, Magistrate J.
*1 This matter is before the Court on Defendant City of Chicago's Motion for Entry of a Protective Order [32-1]. The City seeks a protective order prohibiting dissemination of certain materials produced in discovery outside the confines of this lawsuit. For the reasons stated, the City's Motion for Entry of a Protective Order is granted.

### FACTUAL BACKGROUND

On August 28, 2004, Plaintiff Coprez Coffie ("Coffie") was arrested by two Chicago police officers. Coffie alleges that he was driven by the officers to a nearby alley where he was questioned and searched. Coffie further alleges that during the course of the search, one of the defendant officers jammed a screw-driver into Coffie's rectum. Coffie brings this action under 42 U.S.C. § 1983 for the alleged deprivation of his rights under the Fourth and Fourteenth Amendments. Coffie also brings a *Monell* claim alleging that "the City's policies and practices were the driving force behind the very misconduct practiced by the Defendant Officers against Plaintiff."Pl's Memo. at 2.

### DISCUSSION

The City seeks a protective order preventing Coffie from using and disseminating certain categories of discovery materials for purposes unrelated to this litigation. The parties agree to the majority of the language in the protective order proposed by the City. The City states that Coffie has submitted requests to produce potentially thousands of CR files, personnel files, disciplinary related files, and other records concerning dozens of non-parties and parties. At issue in the current motion is the dissemination of police officer disciplinary actions and histories, including Complaint Registers ("CRs") and Employee Complaint Histories, (hereinafter "disciplinary information.") to persons not involved in this litigation. The public's right of access to court proceedings and court records is not at issue.

Both sides have adopted extreme positions which fail to acknowledge that the other side's argument has the slightest merit. The City claims that dissemination of the disciplinary information to the media, criminal defense counsel, or other non-parties outsides the confines of this lawsuit under any circumstances will subject the Defendant officers and non-parties to undue annoyance and embarrassment and could even impede the Defendant

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT B

Not Reported in F.Supp.2d																		Page 2
Not Reported in F.Supp.2d, 2006 WL 1069132 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

officers' ability to get a fair trial. Coffie asserts an almost absolute right to do whatever he chooses with the disciplinary information. According to Coffie, "[i]n civil litigation, all documents are presumed subject to public review."Pl's Memo. at 4. This type of advocacy is not particularly helpful. Neither side accurately captures the delicate balancing of private and public interests which must occur when both sides have legitimate concerns.

After reading the parties' briefs, the Court was also struck by a sense of deja vu. Less than three months ago, this Court decided the precise question presented in the briefs in favor of individual defendant officers represented by the City's Corporation Counsel and against a plaintiff represented by the same law firm as Coffie. *See McGee v. City of Chicago,* Case No. 04 C 6325, Doc. # 101 (Jan. 9, 2006). In *McGee v. City of Chicago,* 2005 WL 3215558 (N.D.Ill. June 23, 2005), this Court held that good cause existed for shielding certain categories of information produced during discovery (i.e. police officer personnel files, personal and family information of police officers, and personal financial information of police officers) from public disclosure in court proceedings and filings. The Court further held that good cause did not exist for prohibiting public dissemination of CR files and Employee Complaint Histories in court filings, with the exception of identifying information of complainants and witnesses. In January of this year, the Court found good cause for a protective order provision prohibiting the parties from using or disclosing information deemed confidential under the protective order and CR files and Employee Complaint Histories for any purpose other than that litigation. *See McGee v. City of Chicago,* Case No. 04 C 6325, Doc. # 101 (Jan. 9, 2006).

*2 In *McGee,* this Court also indicated that it was willing to consider requests by parties and nonparties to modify the protective order to permit access to and use of the discovery materials at issue. It noted that Seventh Circuit precedent exists for allowing access to discovery materials from one case to aid in other litigation on similar issues.

*See Jepson, Inc. v. Makita,* 30 F.3d 854, 860-61 (7th Cir.1994); *American Telephone and Telegraph Co. v. Grady,* 594 F.2d 594 (7th Cir.1978). McGee's counsel's request to have unlimited ability to disseminate the CR files and Employee Complaint Histories was denied because he failed to explain to whom he wished to disseminate the CR files and other related materials and for what purpose(s). Given the absence of any such explanation, the Court indicated that it would handle any such requests on a case-by-case basis. Conspicuously missing from the current record is any explanation from Coffie's counsel as to whom he seeks to disseminate the disciplinary information, for what purpose(s), and the timing of any such dissemination. After serious consideration and for the additional reasons explained below, the Court affirms its previous holding in *McGee.*[FN1]

> FN1. The Court thanks Coffie's counsel for providing this Court with a copy of the transcript of the proceedings before Judge Shadur on April 12, 2006 in the case of *Ramirez v. City of Chicago.* This Court appreciates Judge Shadur's thoughtful discussion of the same issue presented here.

The City of Chicago is right that there is a difference between the public's interest in evidence presented at a public trial and materials exchanged between the parties during the discovery process. *Hobley v. Burge,* 225 F.R.D. 221, 224 (N.D.Ill.2004) (noting that "the public interest in access to materials that form the basis of a judicial decision is greater than in other materials generated in the discovery process."). Coffie's brief does not adequately distinguish between the public's and press's right of access to judicial decisions and the documents which comprise the bases for those decisions and a litigant's right to disseminate unfiled material that has been obtained during pretrial discovery.

The public's interest in access to unfiled discovery

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1069132 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

materials is less substantial than its interest in court filings and evidence presented at trial. In Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), the United States Supreme Court considered whether a civil litigant has a First Amendment right to disseminate information gained through pretrial discovery. The Supreme Court noted that "pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law ... and, in general, they are conducted in private as a matter of modern practice."Id. at 33;seealsoUnion Oil Co. v. Leavell, 220 F.3d 562, 568 (7th Cir.2000) (observing that "[m]uch of what passes between the parties remains out of public sight because discovery materials are not filed with the court."); Citizens First National Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 944 (7th Cir.1999) (stating "[i]t is true that pretrial discovery, unlike the trial itself, is usually conducted in private."). The Seattle Times court further observed that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."Seattle Times, 467 U.S. at 33.[FN2]The Supreme Court held that a protective order prohibiting dissemination of "the financial affairs of the various plaintiffs, the names and addresses of Aquarian Foundation members, contributors, or clients, and the names and addresses of those who have been contributors, clients, or donors to any of the various plaintiffs" which was limited to the context of pretrial discovery and did not restrict the dissemination of information if gained from other sources did not offend the First Amendment. Seattle Times, 467 U.S. at 37.

> FN2. The Seventh Circuit has similarly noted that "the media's right of access does not extend to information gathered through discovery that is not part of the public record".Grove Fresh Dist., Inc. v. Everfresh Juice Co., 24 F.3d 893, 898 (7th Cir.1994). Coffie has not established that the public at large's right of access to unfiled discovery materials is superior to that of the press.

*3 Coffie's argument that the public has a strong interest in overseeing its police officers' behavior by examining complaints against officers and examining the police department response to those complaints is no doubt correct. The public certainly has a valid interest in knowing more about allegations of police misconduct. However, the public's right to know how allegations of police misconduct are investigated and handled is not absolute in the context of a civil litigation. Seattle Times, 467 U.S. at 31 (stating "[i]t does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery."). This Court has a duty and the discretion to oversee the discovery process. Id. Pretrial discovery "has a significant potential for abuse."Id. at 34.Discovery "may seriously implicate privacy interests of litigants and third parties."Id. at 35."There is an opportunity, therefore, for litigants to obtain-incidentally or purposefully-information that not only is irrelevant but if publicly released could be damaging to reputation and privacy."Id. This Court has a substantial interest in preventing any abuse of the discovery process. Id.See,e.g.,Baker v. Buffenbarger, 2004 WL 2124787 (N.D.Ill. Sept.22, 2004) (granting defendant's motion for protective order prohibiting the use of deposition testimony for purposes other than the lawsuit because plaintiffs intended to misuse defendants' deposition testimony to criticize and embarrass the defendants and possibly influence an upcoming union election).

At this stage of the litigation and on the current record, the Court believes a limitation on disclosure of the police officer disciplinary information for purposes other than this litigation is appropriate. No criticism is voiced here or should be inferred as to the motives of Coffie's counsel. The Court simply needs more details upon which to base a dissemination determination. Strong arguments may be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1069132 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

presented for allowing dissemination of unfiled police officer disciplinary information but this Court is not prepared to state, as a general principle, that plaintiff's counsel in civil rights cases may disseminate unfiled police officer disciplinary information produced during discovery without restriction or limitation.[FN3] The Court believes the better practice is to consider requests to use or disseminate unfiled police officer disciplinary information obtained during pretrial discovery for purposes other than this litigation on a case-by-case basis to determine whether dissemination is reasonable in light of all the competing interests. If dissemination of unfiled disciplinary information is sought in this case, Coffie or a non-party seeking access would need to present this Court with much more information, explaining precisely the who, what, where, when, and why of the requested dissemination.[FN4]

FN3. Authority exists in this district for granting non-parties access to unfiled discovery materials concerning alleged police misconduct after cases have settled. See *Doe v. Marsalis,* 202 F.R.D. 233 (N.D.Ill.2001) (granting the Chicago Reader and one of its staff writer's leave to intervene in lawsuit alleging police misconduct and access to five banker's boxes of confidential documents produced by defendant City of Chicago after lawsuit settled); *Wiggins v. Burge,* 173 F.R.D. 226 (N.D.Ill.1997) (in a settled case, granting plaintiff and intervenors' motion to strike the confidential designation on certain documents produced by the City of Chicago, including Office of Professional Standards investigative files and administrative reviews, recommendations and findings in that particular case and ten other alleged police torture cases). In another case, Judge Plunkett approved a protective order allowing plaintiff's counsel in a case alleging police misconduct to disseminate CR files to other attorneys who were handling cases involving alleged police misconduct with the approval of the judges in those other cases. *McCready v. The City of Chicago,* 1999 WL 409935, at *3 (N.D.Ill. June 7, 1999).

FN4. Other than his general argument that unfiled discovery materials in civil rights litigation are presumed subject to public view, Coffie presents no specific reason for denying the City's request that the disciplinary information be returned to the City's counsel within 60 days of the final termination of this action. The City's request is accordingly granted. See *Acuna v. The City of Chicago,* 2001 WL 1467529 (N.D.Ill. Nov.16, 2001).

An additional matter merits comment. The Court will not, as the City seems to request, order that the names of complainants and witnesses be redacted from CR files prior to production to Coffie's counsel. Def's Memo. at 5. Disclosure of complainants' and witnesses' identities to Coffie's attorneys is an important part of the discovery process. *Id.* at *2 (noting that plaintiffs' counsel efforts to interview persons who made prior complaints against the officer defendants was "an appropriate use of the information in the CRs."); *McCready v. The City of Chicago,* 1999 WL 409935, at *3 (N.D.Ill. July 7, 1999) (refusing to require redaction of all identifying information regarding complainants and witnesses of alleged police misconduct because "permitting [plaintiff's] attorneys to contact other complainants is a reasonable means of discovering admissible evidence."). The Court is unpersuaded by the City's contention that possible contacts by attorneys or investigators for private litigants "would have a chilling effect on the filing of complaints and witness statements." See *McCready,* 1999 WL 409935, at *3 (rejecting similar argument and noting that the "identifies of those witnesses are already known to the Chicago Police Department, and the most troubling source of potential harassment of those witnesses would be police officers, not the attorneys who represent plaintiffs in police misconduct cases.").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 5
Not Reported in F.Supp.2d, 2006 WL 1069132 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

*4 There is a modification that must be made to the City's Proposed Protective Order. Paragraph 16 of the Proposed Protective Order provides that no confidential document is to be filed with the Clerk of the Court unless leave of court to file the particular document is specifically obtained. Judge Holderman, the district court judge assigned to this case, does not permit information designated as confidential under a protective order to be filed under seal. Judge Holderman's procedures for handling documents containing confidential information are set forth on his Judicial Home Page. The City's Proposed Protective Order shall be revised to include the language required by Judge Holderman and submitted to chambers for signature.

Finally, the parties seek a protective order with respect to Coffie's protected health information as that term is used in HIPAA. The HIPAA regulations provide certain privacy protections regarding health information maintained under HIPAA. HIPAA provides that "[a] covered entity may not use or disclose protected health information, except as permitted or required by this subpart or by subpart C of part 160 of this subchapter."45 C.F.R. § 164.502(a). The regulations define "protected health information" as "individually identifiable health information." 45 C.F.R. § 160.103. "Individually identifiable health information" is defined as information that "is created or received by a health care provider, health plan, employer, or health care clearinghouse; and relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) that identifies the individual; or (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the individual."45 C.F.R. § 160.103. 45 C.F.R. § 164.512(e)"create[s] a procedure for obtaining authority to use medical records in litigation," which includes requesting a qualified protective order containing a provision prohibiting the parties from using or disclosing the information for any purpose other than the litigation. _Northwestern Memorial Hospital v. Ashcroft,_ 362 F.3d 923, 925-26 (7th Cir.2004); 45 C.F.R. § 164.512(e). A "qualified protective order" means an order that: (1) prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation for which such information was requested and (2) requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation. 45 C.F.R. § 164.512(e)(1)(v).

Good cause exists for a protective order prohibiting the use of Coffie's protected health information for purposes other than this lawsuit. HIPAA recognizes that Coffie has a legitimate expectation of privacy with respect to the use and dissemination of his protected health information for a purpose other than this litigation. Using or disclosing Coffie's protected health information for a non-litigation purpose may cause unnecessary annoyance or embarrassment and would unfairly and gratuitously invade his privacy. The Court is willing to enter a qualified protective order which prohibits persons involved in this litigation from using or disclosing Coffie's protected health information for any purpose other than this litigation and requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation.

*5 Plaintiff shall submit a proposed qualified HIPAA protective order complying with this order to chambers. The Court refers Plaintiff's counsel to Document # 51 in Case No. 05 C 216 filed in this district as an example of a qualified HIPAA protective order the Court recently entered.

*CONCLUSION*

For the reasons explained above, the City of Chicago's Motion for Entry of a Protective Order is granted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 6
Not Reported in F.Supp.2d, 2006 WL 1069132 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

N.D.Ill.,2006.
Coffie v. City of Chicago
Not Reported in F.Supp.2d, 2006 WL 1069132 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.